Stuart HOUSTON, et al., Appellants,

v.

SECURITY STORAGE COMPANY OF WASHINGTON, Appellee.

No. 83–249.

District of Columbia Court of Appeals.

Argued Dec. 8, 1983.

Decided March 26, 1984.

Richard E. Schimel, Bethesda, Md., for appellants.

Frederick A. Ballard, Washington, D.C., for appellee.

Before MACK, BELSON and TERRY, Associate Judges.

PER CURIAM:

Appellants, Stuart and Mary Houston and State Farm Fire and Casualty Company, contest the dismissal of their tort and contract claims against appellee, Security Storage Company of Washington. This action arose from a failure of Security Storage to redeliver the full contents of a suitcase, filled with valuable items of silver and silverware, deposited by Mr. Houston in its silver vaults. The Houstons, who had previously insured the valuable items with State Farm under a homeowner's policy, then reported the loss to that carrier. State Farm paid the Houstons $8,118.63, the value of the missing items minus a $100 deductible. State Farm, thereupon being subrogated to the Houstons' rights under the policy, brought an action against Security Storage. The complaint alleged that Security Storage—as a bailee for consideration—had failed to exercise reasonable care with respect to the Houstons' property and that it breached the contract of bailment it had entered into with the Houstons when it failed to return all of the bailed property. The Houstons joined State Farm as plaintiffs, seeking to recover the deductible amount under their policy.

Security Storage's principal defense was that at the time the silver and silverware were stored, Mr. Houston placed a valuation on the items for insurance purposes of only $1,000 (the minimum vault storage valuation). Appellee contended that as a result of the Houstons' low valuation of their property, its liability to them, or to any person claiming under them by subrogation, was limited to $1,000.

Security Storage points to certain language found in the Driver's Receipt (the contract of bailment signed by Mr. Houston when he deposited the valuable items for storage) to support its proposition. It directs our attention to the front of the Driver's Receipt where it is clearly stated:

"The value of each article is declared by the owner to be not over $50—unless a higher value is noted on the schedule." Three lines above Mr. Houston's signature, also on the front of the Driver's Receipt, is stated: "Vault Storage Valuation $1000." Toward the top of the front of the form and in bold print appear the words: "Subject to the conditions shown on the reverse side of this receipt." On the back of the receipt are listed the terms and conditions on which goods will be moved, packed, or stored by Security Storage. These indicate that, beyond a certain minimum, the price of storage varies according to the value of the goods stored. The lower portion of the page, in italicized print, reads:

> Silverware and valuables stored in the safe deposit vaults are accepted at owner's valuation and guaranteed against loss or damage by fire and theft.... All such articles stored in our Vault Storage ... are not covered, nor coverable, under the above mentioned Open Master Policy. The depositor must declare the full value of these articles at the inception of the contract.

The trial court accepted appellee's proposition, held the limitation of liability language effective, and granted appellee's motion to dismiss at the conclusion of the trial testimony. By an order dated January 20, 1983, the trial court concluded (1) that there was a valid limitation of liability clause contained in the Driver's Receipt, (2) that State Farm was limited to the valuation Mr. Houston placed on the goods after discussions concerning insurance with Se-

curity Storage's employees, and (3) that plaintiffs failed to prove gross negligence, willful misconduct or fraud on the part of Security Storage to render the limitation of liability clause invalid. Despite these findings the trial court failed to enter a judgment against appellee for the vault storage valuation amount, which was $1,000.

After examining the Driver's Receipt signed by Mr. Houston in this case, we agree with the trial court's conclusion that it contained an effective limitation of liability clause.[1] However, the clause serves merely to *limit* Security Storage's liability, not to absolve it from payment of the declared vault storage valuation amount. Accordingly, we reverse the trial court's grant of appellee's motion to dismiss and remand the case for entry of a judgment for appellants in the amount of $1,000.

■ It is well settled in this jurisdiction that a provision in a bailment contract limiting the bailee's liability will be upheld in the absence of gross negligence, willful act, or fraud. *Julius Garfinckel & Co. v. Firemen's Insurance Co.*, 288 A.2d 662, 665 (D.C.1972); *see* D.C.Code § 28:7-204(2) (1981).[2] We have held that such a limitation can be "[s]hown by evidence of notice to the bailor at the time he places his property in the hands of the bailee." *Julius Garfinckel & Co. v. Firemen's Insurance Co., supra*, 288 A.2d at 665 (citing *Lucas v. Auto City Parking Co.*, 62 A.2d 557 (D.C.1948)).

■ In our opinion, the Driver's Receipt signed by Mr. Houston evidences a limita-

---

1. Furthermore, the trial court correctly concluded that appellants failed to prove gross negligence, willful misconduct or fraud on the part of appellee which would have vitiated the limitation of liability clause.

2. D.C.Code § 28:7-204(2) (1981), which deals with contractual limitation of warehouseman's liability, provides:

> Damages may be limited by a term in the warehouse receipt or storage agreement limiting the amount of liability in case of loss or damage, and setting forth a specific liability per article or item, or value per unit of weight, beyond which the warehouseman

shall not be liable: Provided, however, That such liability may on written request of the bailor at the time of signing such storage agreement or within a reasonable time after receipt of the warehouse receipt be increased on part or all of the goods thereunder, in which event increased rates may be charged based on such increased valuation, but that no such increases shall be permitted contrary to a lawful limitation of liability contained in the warehouseman's tariff, if any. No such limitation is effective with respect to the warehouseman's liability for conversion to his own use.

tion of risk system whereby the appellee's storage rates are made commensurate with the degree of risk it assumes. A fair reading of the entire document reveals limitation of liability language which, when read together, would place a reasonably prudent person on notice of his rights under the bailment contract. Furthermore, the evidence at trial demonstrated that the Houstons had sufficient notice of these provisions. Mr. Houston's own account of his conversation with appellee's clerk reveals that he understood that because the silver and silverware were already fully insured by reason of his State Farm policy, it was not necessary to purchase more insurance from appellee than that provided by the minimum monthly storage charge.

Appellants contend that the fact that Mr. Houston was asked about purchasing additional insurance in no way indicated notice to him of a contractual limitation of liability on the part of Security Storage. We disagree. The storage agreement signed by Mr. Houston required that the depositor declare the full value of his goods. Clearly the valuation provisions contained in the document are for the purposes of determining the extent of the bailee's responsibility. Given this posture of the document, the logical consequence of the Houstons' failure to declare the true value of their property is that they, or any person claiming under them by subrogation, be limited in their recovery to the vault storage valuation they assented to, which was $1,000.

*Affirmed in part, reversed in part, and remanded for entry of judgment for the appellants consistent with this per curiam opinion.*